[Civ. No. 760.   Third Appellate District.—March 15, 1911.]

# O. E. HOTCHKISS, Respondent, v. L. J. HANSBERGER et al., Appellants.

TAXES—SALE FOR EXCESSIVE AMOUNT—RECITALS IN DEED TO STATE—
ITEMS SHOWN—VOID DEED.—Although the law does not require that
a deed for delinquent taxes to the state shall contain anything more
than the insertion of a statement of the total amount of the taxes,
penalties and costs, yet, where such deed does contain an itemized
statement of taxes, penalties and costs, showing a segregation
thereof, with a designation of the amount of each, going to make
up the total sum for which the property was sold, and thus shows
that the sale was for an excessive amount, the deed is void upon
its face.

ID.—SMALL AMOUNT OF EXCESS IMMATERIAL—MAXIM DE MINIMIS IN-
APPLICABLE.—The fact that the excess of the penalties and costs
thus shown was the sum of $1.40 does not affect the invalidity of
the deed.  It is not enough to say that the excess is trifling.  The
maxim *de minimis* has no application to proceedings to transfer
title by virtue of statutory proceedings for the enforcement of a
tax *in invitum*.

ID.—DEED FROM STATE VOID.—The sale being void, no title passed there-
under to the state, and a tax collector's deed from the state would
be equally void and pass no title to the purchaser.

ID.—ACTION BY OWNER TO QUIET TITLE—PROPER EXCLUSION OF DEEDS.
In an action by the owner to quiet his title as against the pur-
chaser from the state, the court properly excluded both of the void
tax deeds from evidence.

ID.—EVIDENCE OF ASSESSMENT-BOOK—EXCLUSION NOT PREJUDICIAL—
SHOWING OF SCHOOL TAX.—Where the assessment-book offered in
evidence showed that a school tax had been improperly included in
the penalties, and that if it had been properly included as a tax
and penalties computed thereon the total sale would be for fourteen
cents more than the amount included in the deed, the exclusion
thereof was without prejudice, and would not justify the excessive
amount of penalties stated in the deed.

ID.—PAYMENT OF TAXES UNDER VOID DEEDS NOT REQUIRED AS A CON-
DITION OF QUIETING TITLE.—Where the tax deeds under which the
defendant claims are void upon their face, no payment of the taxes
due from the state is required as a condition of quieting title
against the defendant.

ID.—OFFER BEFORE SUIT TO PAY TAXES—REFUSAL.—Where plaintiff
offered before suit to pay the taxes, penalties and costs, but the
latter refused the same and put plaintiff to the costs and expenses
of a suit, the defendant has no ground in equity to claim such reim-
bursement as a condition of relief in the suit.

APPEAL from a judgment of the Superior Court of Fresno County, and from an order denying a new trial. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

S. L. Strother, and J. R. Webb, for Appellants.

Snow & Freeman, for Respondent.

HART, J.—The object of this action is to secure a decree quieting plaintiff's title to certain property which is described in the complaint.

The court awarded to plaintiff judgment as prayed for, and it is on an appeal from said judgment, and also from the order refusing defendants a new trial that the cause is brought to this court.

The property involved in this controversy consists of a large number of town lots situated in the town of Selma and in additions thereto, in Fresno county.

Defendants claim title to said lots through a sale thereof and a deed executed thereupon by the tax collector of Fresno county to satisfy the taxes levied on a mortgage subsisting on said lots. It was, in fact, stipulated by the parties "that the plaintiff was, at the commencement of this action, and is now, the owner of the property in controversy unless the title thereto was divested by a deed from the Tax Collector of Fresno County, dated the 18th day of July, 1900, to the State of California, and by a deed from the State of California, dated the 26th day of October, 1903, to the defendant herein, L. J. Hansberger."

There are but two important points discussed in the briefs and upon which the appellants insist that they are entitled to a decision by this court, viz.: 1. That the court erred in excluding as evidence the deed from the tax collector to the state and the deed from the state to the defendant, L. J. Hansberger; 2. That the plaintiff is obliged to refund the taxes paid by defendant as a condition precedent to his right to a decree quieting his title, and that the plaintiff having failed to per-

form this equitable prerequisite, the judgment cannot, therefore stand.

On the third day of July, 1895, the property was sold by the tax collector to the state for taxes delinquent for the year 1894 on a mortgage subsisting thereon, and no redemption having been made by the owner of the property within five years from the date of said sale to the state, the tax collector thereupon, in obedience to the terms of section 3785 of the Political Code, executed to the state a deed thereto.

The ground upon which the court refused to receive in evidence the deed from the tax collector to the state was that said deed itself, upon its face, shows that it is illegal and void, for the reason that it appears therefrom that the amount for which the lots were sold to the state is in excess of the amount of the taxes levied on said property and the penalties and costs which accrued thereon by reason of the default in the payment of said tax against said property.

The rejection of the deed from the state to Hansberger was based upon the ground that the state, having no title, could, of course, convey none, and that said deed was, therefore, without any probative value. The last stated proposition is obviously correct if the objection to the admission of the deed to the state be sound, to the consideration of which proposition we will now address ourselves.

In the outset, it may be stated that it is not contended by counsel for respondent that it is necessary for the tax collector to recite in tax deeds the items constituting the total of the penalties, costs and charges. To the contrary, it is conceded by counsel that nothing more is required by the law in this regard than the insertion in such deeds of a statement of the total amount of the taxes, penalties, costs, etc. But it is claimed by respondent that where a tax deed does contain an itemized statement of the taxes, penalties and costs—that is, a segregation of the several items, together with a designation of the amount of each, going to make up the total sum for which the property has been sold to satisfy the tax lien—and it therefrom appears that the amount for which the property has been sold is in excess of the actual taxes, penalties and costs due thereon, such deed thus discloses upon its face that it is void under the authorities bearing upon that proposition. That this contention involves a correct view of the law is no

longer an open question. (*Treadwell* v. *Patterson*, 51 Cal. 639, and cases therein cited; *Harper* v. *Rowe*, 53 Cal. 233; *Axtell* v. *Gerlach*, 67 Cal. 483, [8 Pac. 34]; *Boston Tunnel Co.* v. *McKenzie*, 67 Cal. 485, [8 Pac. 22]; *Knox* v. *Higby*, 76 Cal. 264, [18 Pac. 381]; *Simmons* v. *McCarthy*, 118 Cal. 622, [50 Pac. 761]; *Miller* v. *Williams*, 135 Cal. 183, [67 Pac. 788].)

The deed to the state contains the following recital: "That the amount of the tax so levied on said property was the sum of $26.13 as follows: For county purposes the sum of $16.52; for state purposes, the sum of $9.61; that the amount of said tax was segregated into installments in accordance with law, and the costs and charges which have since accrued thereon amount to the further sum of $5.15." The property was, therefore, sold to the state for the total sum of $31.28.

Section 3731 of the Political Code provides that "the auditor must compute, and enter in a separate money-column in the assessment-book the respective sums, in dollars and cents, rejecting fractions of a cent, to be paid as a tax on the property therein enumerated, and segregate and place in the proper columns of the book the respective amounts due in installments. . . ."

It is provided by section 3756 of said code that, in case the first installment of the taxes is not paid on the last Monday in November of each year, at 6 o'clock P. M., such taxes are delinquent, and that thereupon the tax collector must add to such taxes and thereafter collect, for the use of the county, the sum of fifteen per cent thereon, and if such taxes be not paid "before the first Monday in April next succeeding, at 6 o'clock P. M.," there shall be collected by the tax collector an addition of five per cent thereon. It is further provided by said section that if the second installment of taxes is not paid on the last Monday in April, then five per cent is added to such second installment.

Section 3770, Political Code, provides: "The tax collector must collect, in addition to the taxes due on the delinquent list, together with the penalties for delinquency, fifty cents on each lot, piece, or tract of land separately assessed," etc.

Under the foregoing provisions of the Political Code, the amount which should have been added by the tax collector to the amount of the tax, $26.13, would be as follows, rejecting,

as section 3731 of said code authorizes to be done, fractions of a cent:

| | |
|---|---:|
| Fifteen per cent of first installment (one-half) of said tax | $ 1.95 |
| Five per cent of $13.06 | .65 |
| Five per cent of second installment, $13.06 | .65 |
| Amount required by section 3770, Political Code | .50 |
| Total to be added to tax | $ 3.75 |
| Add tax | 26.13 |
| Total, tax and penalties, etc | $29.88 |

The deed recites, it will be recalled, that the amount of the costs and charges added to the tax was the sum of $5.15, bringing the amount for which the land was sold up to the sum of $31.28, which sum is larger than the amount for which the tax collector was authorized to sell the property by the sum of $1.40. In other words, the difference between the amount of the costs and charges added to the tax by the tax collector and the amount which the law authorized him to add to said tax for costs and charges is the sum of $1.40.

Under this showing the sale of the property involved to the state was void. In *Simmons* v. *McCarthy,* 118 Cal. 625, [50 Pac. 761], it is said: "It is not enough to say that the difference is trifling. The maxim *de minimis* has no application in proceedings to transfer title by virtue of statutory proceedings for the enforcement of a tax." And all the cases heretofore cited so hold. The reason of the rule is that where it is sought to divest a person of his title to property for delinquency in the payment of a tax *in invitum* imposed upon such property, the law authorizing the tax must be followed with substantial strictness, and in the sale of such property to satisfy the tax lien a more flagrant violation of the taxpayer's rights can hardly be imagined than in imposing upon his right of redemption a greater burden than the law anywhere authorizes. If the tax collector may be allowed to add an excess of $1.40 to the amount actually due for penalties and costs, he may, with equal reason, add a greater sum. The principle would be the same in both cases. But, as stated, he has no authority to add to the tax and sell the property for any sum,

however small, in excess of the amount actually due. In the case of *Simmons* v. *McCarthy,* 118 Cal. 625, [50 Pac. 761], the excess was only three cents, and the court held the sale void for that reason.

It is very clear that the tax collector sold the property in the case at bar to the state for a larger sum than that to which the tax, penalties and costs amounted, and that said sale was for that reason absolutely void. Said sale being void, the deed executed by the tax collector to Hansberger was, of necessity, without force and conveyed no title. Both instruments were, therefore, without the slightest probative value as supporting defendants' claim of title to the land in dispute, and it necessarily follows that the court's ruling excluding them as evidence for that purpose was proper.

But the defendants contended in the court below and contend here that the assessment-book and the delinquent list, if allowed in evidence, would have disclosed that the property sold for no more than the precise total amount of the taxes, penalties, costs and charges, and that the court erred by its refusal to allow those records to be received in evidence.

It appears from the assessment-book that, in addition to the state and county taxes, amounting to $26.13, levied on the property, there was, at the same time, levied thereon a special school tax of $1.37. This last amount was, evidently, included in the sum of $5.15, which the deed recites constituted the "costs and charges which have since accrued" on the amount of the tax, $26.13.

Obviously, the said special tax could not properly be counted as or included in the penalties, costs, etc., accruing on the tax. It constituted a part of the tax levy itself on the land, and, therefore, the amount of the tax for the year of 1894 on said land should have been, in lieu of the sum of $26.13, the sum of $27.50, on which basis the penalties, etc., should have been computed. And, computing the penalties and charges upon said sum of $27.50, it will be seen that the property was sold to the defendant for fourteen cents less than the amount actually due, as the following will show:

First Inst. .........................................$13.75
Fifteen per cent of said sum........................ 2.06
Five per cent of said sum............................ .68
Second Inst. ...................................... 13.75
Five per cent of said sum............................ .68
Costs ............................. .................... .50

Total, penalties and costs...........................$ 3.92
Tax ............................. .................... 27.50

Total tax, penalties, etc...........................$31.42
Property sold for.................................. 31.28

It is thus to be observed that, from whatever viewpoint the
assessment-book may be considered, there is not disclosed
thereby any evidence tending to show that the amount of the
penalties and costs, as recited in the deed, was legally made up
or computed upon a legal basis.  On the one hand, said book
shows, if anything at all, that the amount of penalties, etc.,
as indicated by the deed, was erroneously computed by reason
of the unauthorized inclusion therein of the item of $1.37 for
the special school tax.  As before stated, it was the plain duty
of the auditor to have added the special tax to the general tax
and upon the total thereof the duty of the tax collector to
make the computation of penalties, costs, etc.  But, having
without legal right included the special tax in the amount of
costs and penalties, it follows that said tax was in legal effect
entirely omitted from consideration for any purpose, thus
leaving as the sole basis for the computation of penalties and
costs the general tax in the sum of $26.13.  And, as we have
shown, the amount of the penalties and  costs thus computed
would be the sum of $3.75, in lieu of the sum of $5.15, as re-
cited in the deed.

On the other hand, as seen, the assessment-book discloses
that, if the auditor had properly done his duty and so added
to the general tax the item of $1.37 for the special school tax,
the result of the computation of the penalties and costs ac-
cruing thereon would be an excess of fourteen cents in the
total for which the property should have been sold over the
total for which it was sold.  It is thus very plainly to be seen
that the assessment-book would not in any view have aided
in the slightest degree in affording any legal justification for

15 Cal. App.—39

the excess in the amount of the penalties and costs, as recited in the deed, over the amount actually authorized on the amount of the tax as indicated by said deed. The ruling of the court rejecting the assessment-book and the delinquent list was, therefore, not erroneous—at any rate, it was clearly without prejudice.

We may parenthetically observe that no authorities have come to our attention as to the precise legal effect upon the sale of property for less than the total amount of the tax and accruing costs and penalties. The code requires that the sale shall be for the amount of the tax, penalties and costs, and it is, of course, very clear that the tax collector has absolutely no more authority to sell it for less than for more than that amount. Upon principle, we should say, if it were necessary to decide the question here, that a sale for less than the total amount due the state for taxes, penalties and costs would be void, since it would not be a sale according to law, and, besides, it is very clear that the state would thus be defrauded of its just dues.

The point that the court erred in rendering judgment in favor of plaintiff without compelling the latter to first pay to defendant the amount of the taxes, penalties and costs paid by him for the property in dispute at the tax sale cannot be maintained. In other words, defendant is not in a position to demand the application here of the equitable maxim, that he who seeks aid from equity must do so prepared and willing to do equity. All the cases to which our attention has been called bearing upon this proposition, except that of *Flannigan* v. *Towle*, 8 Cal. App. 230, [96 Pac. 507], have been where the owner of the property has proceeded against the tax collector or other officer concerned with the levy of the assessment or the enforcement of the tax, and attempted to enjoin or otherwise invalidate the sale of the property for the taxes levied upon it. (See *Weber* v. *City of San Francisco*, 1 Cal. 457; *S. J. G. Co.* v. *January*, 57 Cal. 614; *County of Los Angeles* v. *Ballerino*, 99 Cal. 597, [32 Pac. 581, 34 Pac. 329]; *Esterbrook* v. *O'Brien*, 98 Cal. 673, [33 Pac. 765]; *Ellis* v. *Witmer*, 134 Cal. 253, [66 Pac. 301]; *Couts* v. *Cornell*, 147 Cal. 561, [109 Am. St. Rep. 168, 82 Pac. 194]; *Steele* v. *County of San Luis Obispo*, 152 Cal. 785, [93 Pac. 1020]; *San Diego Realty Co.* v. *Cornell*, 150 Cal. 637, [89 Pac. 603]; *San Diego Realty Co.* v. *Cornell*, 151 Cal. 200, [90 Pac. 1130].) In those cases

it is held that the owner of the property is not entitled to equitable relief unless he comes prepared to do equity, and so pay the taxes justly due against the property as to which he has asked relief. Of course, a more appropriate application of the equitable maxim in question could not be met with than in those cases where the owner·of the property is attempting to have his property relieved from the lien of the tax, justly due the state, whether properly levied or not, by some proceeding against the state or its fiscal agents. Every owner of property owes this debt to the state in any event; he must bear his just proportion of the burdens of government, and equity will not permit him to escape·payment of his taxes, in a suit against the tax collector or assessor, by which he attempts to avoid it on account of the omission of some legal requisite in the proceedings leading to the assessment or sale or in the assessment or sale itself, even though such omission be sufficient to invalidate the assessment or sale.

The principle at the bottom of this proposition is that no one should be aided by a court of equity in an attempt to escape the consequences of a just and honest obligation, even if there exists some legal ground on which it could be avoided. The owner of the property, as stated, still owes the debt to the state whether the lien which attaches to his property to secure its payment has been legally so attached or not, and it would be contrary to every consideration of reason and justice to say that, as against the state, he could secure relief from a court of equity that would entirely release his property from the just and necessary burden of taxation and he thus escape the performance of one of the most important duties resting upon a property owner. Indeed, in many cases this principle prevails, and may be invoked as to transactions between private individuals, where one seeks equitable aid to be discharged from the consequences of a legal obligation, for some reason nonenforceable, as, for instance, in a case where there is a bar to a legal recovery by the statute of limitations, and *a fortiori,* should the rule be applied in those cases wherein the owner of property seeks to prevent the state from collecting a just tax upon his property.

But in cases by the owner of property against the purchaser at a void tax sale, obviously no such reason exists for the application of the equitable doctrine we are considering as applies and controls in the case wherein the owner of the

property proceeds against the state. It may be that in a case where the sole claim of plaintiff is some irregularity in the proceedings leading to the sale or in the sale itself, and where there is no ground for holding the sale void, the defendant would be entitled to reimbursement before plaintiff would be entitled to a decree. And there is no doubt but that the legislature could, as we understand has been done in some jurisdictions, require reimbursement under any circumstances in a case in which the owner asks for a decree quieting his title as against the tax title of the purchaser. But the case here, as seen, is not one wherein mere irregularity in the proceedings or the sale is charged, but is a case in which the sale was absolutely void, and therefore no title vested in the purchaser by reason thereof. Nor has our legislature authorized reimbursement in a case of this character where the sale is void.

As is said in *Campbell* v. *Canty* (No. 758),* the opinion in which has been filed this day, the policy of the state, as clearly indicated by its revenue legislation, is to give to a delinquent taxpayer every reasonable opportunity, compatible with the rights of the state in the premises, to redeem his property before it is finally sold by the state to an individual. The notice of such sale is addressed to the owner of the property as well as to the public. He is, in effect, then notified that, unless he comes forward and pays the taxes and accruing penalties and costs and so redeem his property by a certain designated time, the property will be sold for the purpose of satisfying the tax, etc. The purchaser appears at the tax sale hedged about by the doctrine of *caveat emptor*, and, thus buying the property and receiving the tax collector's deed, he is charged with notice of the defects, if any, in the title thus acquired. If the sale is void for any reason, he is not only charged with knowledge of that fact, but he thus acquires no rights to the property which either a court of law or of equity can enforce. (*Greenwood* v. *Adams*, 80 Cal. 74, [21 Pac. 1134].) In other words, if the sale is absolutely void, as here, "the payment of the tax by the purchaser stands on the footing of a voluntary payment, not made at the request of the owner of the land, and which he is under no obligation to refund." (*Harper* v. *Rowe*, 53 Cal. 233, 238; *Greenwood*

---

*This case, after judgment in the district court of appeal, was, on May 12, 1911, by order of the supreme court, transferred to the supreme court for hearing and decision.

v. *Adams,* 80 Cal. 74, [21 Pac. 1134]; *Dranga* v. *Rowe,* 127 Cal. 506, [59 Pac. 944]; *Preston* v. *Hirsch,* 5 Cal. App. 485, [90 Pac. 965].)

The case of *Flannigan* v. *Towle,* 8 Cal. App. 230, [96 Pac. 507], appears to hold a different view upon this proposition from that expressed here. But it is to be said with reference to that case that the briefs therein disclose that very little resistance was offered by appellants to the contention of respondent that they should have offered to do equity by reimbursing defendants for the money they expended in purchasing at the tax sale the property to which plaintiffs claimed title. In truth, no reply brief was filed by plaintiffs after the point was urged in the brief of respondents, and the proposition was practically not argued here except from the viewpoint of defendants. But we are constrained to here hold that if there is anything in *Flannigan* v. *Towle* inconsistent with the views herein expressed upon the point under review, the same must be overruled.

Of course, it must be understood that plaintiff's immunity from reimbursing defendants does not relieve him of the duty of paying the taxes, penalties, etc., due the state. If, in other words, there is any legal way, either by virtue of section 3804 of the Political Code or otherwise, by which defendants may have restored to them the amount they have expended in purchasing the property and in the payment of the taxes on the same subsequently to the execution to them of a deed by the tax collector, and they should successfully assert their rights in that regard, the land would, nevertheless, still be subject to the lien of the state for such taxes, etc., since the action here is not against the state, and, therefore, its rights herein have not been adjudicated and, consequently, cannot be concluded by the decree.

It may here properly be observed that the plaintiff, before the institution of this suit, offered to repay defendants the tax, penalties and costs paid by them for the land, but that the latter refused the same. Their position with regard to the equity which they now demand is very little different from that of the defendant in *Campbell* v. *Canty, supra.* The only difference is that in the latter case the defendants not only refused to accept reimbursement before the suit was brought, but failed to plead or demand the equity in their answer,

while here the defendants have pleaded and thus demanded it. But we are of the opinion, founded both upon principle and authority, that, the sale being absolutely void, the defendants are not under any circumstances entitled to the equity here claimed by them.

For the reasons set forth herein, the judgment and order are affirmed.

Chipman, P. J., concurred.

BURNETT, J., Concurring.—I concur in the judgment. Upon further reflection, I think that *Flannigan* v. *Towle* goes too far in the statement of the rule as to the reimbursement of the purchaser at a tax sale. As I conceive it now, where the tax is legally assessed and is justly due and the property is sold to a purchaser in good faith, and the deed is not void upon its face, the purchaser has a claim in equity for reimbursement. This should be presented, however, in his answer, if a suit be brought against him by the owner to quiet his title. In the case at bar, since the plaintiff offered to reimburse the purchaser, I can see no equity in requiring the former to pay the latter, as a condition precedent to judgment, something that the defendant declined to accept and thereby made it necessary for plaintiff to incur the expense of a trial. In other respects I agree with the opinion of Justice Hart.